Emily Teplin Fox, OSB No. 121720
efox@oregonlawcenter.org
Ryan Newby, OSB No. 114724
rnewby@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW 5th Ave, Suite 812
Portland, OR 97204
(503) 473-8310

Angela Sherbo, OSB No. 824472
Angela.S@youthrightsjustice.org
YOUTH, RIGHTS & JUSTICE
1785 NE Sandy Blvd., Suite 300
Portland, OR 97232
(503) 232-2540

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| A.R., a minor child, and<br>B.C., a minor child, by their guardian ad litem RICHARD VANGELISTI; on behalf of themselves and all others similarly situated; and<br>CASA FOR CHILDREN, INC., an Oregon not-for-profit organization,<br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON by and through its DEPARTMENT OF HUMAN SERVICES; CLYDE SAIKI, in his official capacity as Director of the Oregon Department of Human Services; and<br>REGINALD C. RICHARDSON, in his official capacity as Deputy Director of the Oregon Department of Human Services,<br><br>      Defendants. | Case No. 3:16-cv-01895-YY<br><br>**DECLARATION OF ANTHONY URQUIZA**<br><br>**In Support of Plaintiffs' Motion for a Preliminary Injunction** |

I, ANTHONY JOSEPH URQUIZA, Ph.D., do hereby declare:

1.     I am a Clinical Psychologist and Clinical Professor in the Department of Pediatrics at the University of California, Davis Children's Hospital. In this role, I am the Director of the Child and Adolescent Abuse, Resource, and Education (CAARE) Center and the Parent-Child Interaction Therapy Training Center. My curriculum vita is attached as Exhibit 1.  Attached as Exhibit 2 is a list of cases from the past four years in which I have testified in either a deposition or at trial.  I excluded from this list child welfare and juvenile criminal cases, to protect the privacy of the children involved.

2.     For the last two and a half decades, I have specialized in the psychological assessment and treatment of abused and neglected children. My clinical experience has included more than 1000 psychological evaluations of children involved in various aspects of the child welfare system; and more than 1000 children I have treated in psychotherapy. My research addresses different types of family violence, including the effect of child maltreatment on children's development, children's adjustment to foster care, treatment approaches for physically abusive families and sexually abused children, implementation of empirically-supported treatments for maltreated children, and psychodiagnostic issues related to child mistreatment. As Director of the CAARE Center, I oversee a staff of about 45 professionals who provide mental health services to approximately 400-450 children each week – most of whom have a history of child maltreatment. Finally, as an expert witness, I have testified in dependency court, criminal court, civil court, and state administrative hearings (e.g., license revocation hearings for foster parents, day care providers, teachers, group homes).

2-   DECLARATION OF ANTHONY URQUIZA

3.      I've been retained by plaintiff's counsel in this matter to provide information about child development, developmental psychopathology, child maltreatment, the effects of foster care placement, child trauma, and the placement of children in dependency setting.  Specifically, I've been retained by plaintiff's counsel to offer an opinion about whether the state of Oregon's practice of 'hoteling' (i.e., housing children in foster care in hotels/motels), 'cotting' (i.e., housing children overnight in the offices of the Oregon Department of Human Services), and housing children in juvenile detention facilities (where the child has no criminal charge) has a negative impact on the child's emotional and psychological well-being.

4.      My rate for all services (travel, clinical, records review, report writing, testimony, deposition, etc) is $350/hour; payable to "UC Regents."

5.      The sources of information about the actions of the State of Oregon are derived from several recent media accounts of children in dependency and being placed in hotel/motel rooms, required to sleep on cots/air mattresses in offices, and housing children at juvenile detention facilities.[1]  In addition, I reviewed and considered an Excel

---

[1] *See* Social workers say what it's like to deal with foster kids living in the office – OPB, July 25, 2016; http://www.opb.org/news/article/oregon-foster-care-social-workers-in-office/; With foster care shortage, teen held in juvenile detention in Deschutes County – Bend Bulletin, Aug. 28, 2016, http://www.bendbulletin.com/localstate/4610335-151/with-foster-care-shortage-teen-held-in-juvenile; Foster Care Shortage (podcast), OPB: Think Out Loud, July 7, 2016, http://www.podcastchart.com/podcasts/opb-s-think-out-loud/episodes/foster-care-shortage; New report on Oregon's foster care system charts solutions, failures, Aug. 25, 2016, http://www.oregonlive.com/politics/index.ssf/2016/08/new_report_on_oregons_foster_c.html; and 'Crisis' in Oregon foster care system forcing children in motels and offices instead of homes – Aug. 8, 2016, http://www.kptv.com/story/32713348/crisis-in-oregon-foster-care-system-forcing-children-in-motels-and-offices-instead-of-homes.

3-   DECLARATION OF ANTHONY URQUIZA

spreadsheet titled "Copy of DHS hotel data 2" which I understand was produced by the Oregon Department of Human Services.

6. Although child development incorporates many aspects of a child's life (social, biological, social, emotional, and psychological functioning), one of the central means of forming healthy capacities in children is the quality and continuity of their relationship with a primary caregiver. Over the last half century, research has repeatedly demonstrated that the presence of a stable and positive affiliative parent is both the foundation for future healthy development and the foundation for resilience from adversities. Additionally, it is understood that the younger the child, the greater the need for a caregiver to provide support, nurturing, guidance, and security.

7. Unfortunately, the experience of child maltreatment and a decision to remove children from their abusive parents signals risks related to the experience of abuse or neglect, traumatic loss of the biological parent (i.e., loss can be traumatizing even when the parent was abusive), and change to new, substitute caregivers (e.g., foster parents).

8. Most children who are in dependency experience significant trauma, as well as emotional and psychological distress.

9. An examination of research into the mental health problems associated with maltreated children in foster care highlights the range of severe emotional and psychological problems they exhibit. These problems include disruptive behavior (e.g., aggression, defiance), trauma symptoms (e.g., nightmares, fears), and mood-related problems (e.g., depression, anxiety). In addition, approximately two-thirds of children in foster care have some type of developmental delay (e.g., language delay, poor school

4- DECLARATION OF ANTHONY URQUIZA

performance, intellectual disability), which further limits their understanding and capacity to cope with the changes in their life.

10.   Because of the severity of these problems, involvement in foster care is a critical point for effective management of these children – which ideally leads to intervention and recovery. However, without thoughtful and trauma-informed care, management of children in foster care can lead to compounding their abuse and lead to a downward spiral of mental health.

11.   During the last two decades, one of the foremost concerns of maltreated children has been the negative sequelae associated with the experience of childhood trauma. Trauma effects have been recognized as crossing many domains of functioning, impairing coping capacities, and leading to affective dysregulation, poor impulse control, and early onset psychosis. Trauma has also been strongly associated with subsequent engagement in drug abuse and alcohol abuse.

12.   As a result of the recognition of trauma as a major factor that needs to be recognized in the lives of maltreated children and children involved in dependency, the National Child Traumatic Stress Network (NCTSN) has identified the need for all governmental and community-based entities involved with dependent children to be trauma-informed.[2]  They assert that establishment of a trauma-informed child welfare system is an essential component of ensuring the psychological health and emotional well-being of children in dependency.

---

[2] *See* The Trauma-Informed Child Welfare Practice Toolkit, http://www.nctsn.org/content/trauma-informed-child-welfare-practice-toolkit

5-   DECLARATION OF ANTHONY URQUIZA

13. In the best of circumstances, maltreated children in dependency have experienced significant emotional and psychological distress – the effects of which may be positively impacted through effective and trauma-informed interventions, encompassing both child welfare policies and the child welfare staff who implement these policies in delivering care to children in the foster care system. Conversely, failure to recognize and understand the risks in caring for this highly vulnerable population incurs negative and long-lasting mental health problems. These problems then become relatively intractable in the daily lives of foster children – leading to decreased opportunity for reunification, multiple foster placements, and higher levels of care.

14. In summary, maltreated children's traumatic response is one of the most damaging aspects of children in dependency – requiring thoughtful and effective trauma-informed care by child welfare services.

15. Oregon's practice of 'hoteling' children, 'cotting' children, and housing children in juvenile detention facilities creates serious emotional and psychological harm to the vulnerable children in dependency. By their situation, maltreated children in dependency constitute a population that possess a history of trauma, emotional distress, psychological distress and lack of stability in their lives. At a time when they are most vulnerable (i.e., removal from their home, loss of a relationship with their parent, limited understanding of the changes in their life), they are provided a social service response which is opposite from that which they need.

16. Instead of placement in a family or group home setting – with trained, consistent, and responsive parents/caregivers - they are housed in offices, motels, and juvenile

6-   DECLARATION OF ANTHONY URQUIZA

detention facilities. Even children placed in group homes, who are provided consistent and supportive caregivers, fare better than placement in an office building. These children are deprived of the primary source from which they might manage and alleviate their distress – the warmth and security provided by a consistent and responsive caregiver.

17. Placement in these strange and atypical living situations is a dehumanizing pattern of behavior that fails to recognize the unique needs of children in the care of the Oregon Department of Human Services.

18. Further, these children are not able to participate in the common types of caregiving environments that come within the social structure of a family or group home setting – interactions with peers, involvement in school, receiving the immediate assistance from a caregiver who understands their problems.

19. These children are deprived of the normal amenities and comforts necessary for a minimal level of security for a child – a consistent primary caregiver who is responsive to their specific needs. Absent from their daily lives are to social structures (e.g., bedtimes, common meals, assistance with daily hygiene such as taking a bath) that are so important to providing a child the security of consistent caregiver who provides them with positive regard and nurturing. They are denied the caregiver who possesses the ability to consistently recognize their needs and comfort them when they are anxious, afraid, and sad – feelings common to children who are in dependency.

20. Because the emotional and psychological health of a child is largely derived from stability and continuity within the family context, the actions of Oregon's dependency

housing practices place maltreated children at further risk of emotional and psychological harm.

21.     Furthermore, research highlights multiple placements and perceptions of placement insecurity as contributors of harm (e.g., leading to more mental health concerns, predicting more placement disruptions). Thus, the insecurity inherent in Oregon's housing practices and the fact that these practices necessarily result in multiple placements adds further risk of emotional and psychological harm.

22.     Oregon Department of Human Services' own data appears to support the existing research with which I am familiar.  The Excel spreadsheet described above, "Copy of DHS hotel data 2," contains several columns including DOB [date of birth], Gender, Primary Race, Hotel or Office, Date Started, and Date Ended.  This spreadsheet appears to collect information on children who spent the night in a hotel or office between January 16, 2016 and August 15, 2016, although there are no incidents listed between January 16, 2016 and May 24, 2016.

23.     I sorted the data by DOB, or birthdate, by highlighting the range of cells in the spreadsheet, clicking "Data," and then clicking "Sort by . . . DOB."  Having re-ordered the data in this manner, and observing birthdates, primary race, and genders, I was able to identify how many of the children listed experienced an incident of staying in a hotel or an office more than once.

24.     Of 50 of individual children listed on the spreadsheet (a total of 64 separate placements), 9 appear to have experienced more than one incident of staying in a hotel or

8-   DECLARATION OF ANTHONY URQUIZA

office. These 9 children account for a total of 22 (34%) of the placements, with some children having 3 or 4 placements.

25.     Given the available data, this means that once a child has been 'hoteled' or 'cotted' a first time, they have a greater likelihood of having additional instances of being 'hoteled' or cotted.' That is, once a child has been 'hoteled' or 'cotted,' then they may be at greater risk to be 'hoteled' or 'cotted' a second, third, or fourth time.  As stated earlier, this practice of inappropriate placements is harmful to a child's psychological and emotional functioning. The practice of subjecting certain children to repeatedly being 'hoteled' or 'cotted' creates a situation that would lead to significant and long-term harm and a pattern of behavioral and psychological maladaptation. Further, it is likely that the harm caused by the Oregon Department of Human Services through the repeated use of this practice would hinder efforts toward reunification and/or lead to these children experiencing increasingly higher levels of care within the foster care system.

25.     Finally, the inappropriate practice of 'hoteling,' 'cotting,' and housing children in youth detention facilities and the harm incurred by these practices should be obvious to Oregon Department of Human Services administrators and any social service professional. These practices are inconsistent with positions that are promoted throughout the national child welfare system of care,[3] and within the state of Oregon.[4]

---

[3] *See* http://www.ncjfcj.org/our-work/trauma-informed-system-care.

[4] *See* Trauma Informed Oregon, http://traumainformedoregon.org/; Oregon Governor Kate Brown Signs Landmark Trauma-Informed Education Bill Into Law, https://acestoohigh.com/2016/04/03/oregon-governor-kate-brown-signs-landmark-trauma-informed-education-bill-into-law/; OHA Establishes Statewide Collaborative For Trauma Informed Care, http://pcpci.org/blog/oha-establishes-statewide-collaborative-trauma-informed-care.

9-    DECLARATION OF ANTHONY URQUIZA

26. It should be readily apparent to child welfare administrators and social service staff, that the practices of 'hoteling,' 'cotting,' and housing dependent children in juvenile detention facilities is destructive to their emotional and psychological health, and impairs their recovery from their prior victimization.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 4th day of October, 2016.

ANTHONY J. URQUIZA, Ph.D.
Director, UC Davis CAARE Center
Clinical Professor, Department of Pediatrics

10- DECLARATION OF ANTHONY URQUIZA