Emily Teplin Fox, OSB No. 121720
efox@oregonlawcenter.org
Ryan Newby, OSB No. 114724
rnewby@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW 5th Ave, Suite 812
Portland, OR  97204
(503) 473-8310

Angela Sherbo, OSB No. 824472
Angela.S@youthrightsjustice.org
YOUTH, RIGHTS & JUSTICE
1785 NE Sandy Blvd., Suite 300
Portland, OR 97232
(503) 232-2540

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| A.R. a minor child, and B.C., a minor child, by their guardian ad litem RICHARD VANGELISTI; on behalf of themselves and all others similarly situated; and CASA FOR CHILDREN, INC., an Oregon not-for-profit organization,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON by and through its DEPARTMENT OF HUMAN SERVICES; CLYDE SAIKI, in his official capacity as Director of the Oregon Department of Human Services; and REGINALD C. RICHARDSON, in his official capacity as Deputy Director of the Oregon Department of Human Services,<br><br>Defendants. | Case No. 3:16-cv-01895-YY<br><br>**DECLARATION OF MARK HARDIN**<br><br>**In Support of Plaintiffs' Motion for a Preliminary Injunction** |

1 – DECLARATION OF MARK HARDIN

I, Mark Hardin, hereby declare:

1. Employment history: I am a retired attorney. From 1980 to 2008, I was the Director of Child Welfare at the American Bar Association Center on Children and the Law in Washington, DC. Before starting at the ABA, I worked for the Portland State University's Regional Research Institute for Human Services and for Multnomah County Legal Aid Service.

2. For more than thirty years, I focused on legal, judicial, administrative, and practice issues related to children in foster care. I worked with caseworkers, attorneys, judges, supervisors, judicial administrators and staff, social work administrators, service providers, professors, legislators, private foundations, and political officials throughout the United States. Over the years I worked onsite in 48 of the 50 states. My duties included:

   a. Consulting on best policies, practices, standards, and laws for abused and neglected children and children in out-of-home care.

   b. Preparing and delivering presentations on best policies, practices, and laws for abused and neglected children and their families and for children in out-of-home care.

   c. Writing books, monographs, and articles related to child welfare cases.

   d. Helping to draft, develop, and refine federal and state legislation and regulations and state and local judicial rules affecting maltreated children in out-of-home care.

    e. Preparing model legislation, rules, and regulations affecting maltreated children in out-of-home care.

    f. I have developed standards for judges, attorneys for agencies, attorneys for parents, and attorneys for children. I have also assisted others in the development of standards.  These standards address, among other things, placement and priorities for placement of children. Standards I have written or helped develop have included those adopted or approved by the American Bar Association, National Council of Juvenile and Family Court Judges, Conference of Chief Justices, Conference of State Court Administrators, and Child Welfare League of America.

    g. Attached to my declaration is Exhibit 1, my current resume.

    h. I have won several national awards for my work. The ABA has honored me by creating an annual award in my name.

    i. In short, I have devoted my entire career to developing and implementing standards and best practices in child welfare cases.

3.  Purpose of declaration: I have been retained by plaintiffs' counsel as an expert on professional norms, standards, and practices regarding the treatment of children removed from their homes by public child welfare agencies.

4.  DHS practices in question: I have been asked specifically to consider certain current practices of the Oregon Department of Human Services (DHS). Specifically, I am to comment on the appropriateness of placement of children in hotel or motel rooms,

3-   DECLARATION OF MARK HARDIN

overnight on cots or air mattresses in DHS offices, and in juvenile detention facilities in cases where there are no pending charges against the children.

5.  Information on Oregon practices: To confirm and clarify these current Oregon practices, I have relied upon public statements from DHS to media outlets and on recent stories in the Oregonian and Bend Bulletin.

6.  Sources of information for opinion: To form an opinion on the propriety of such Oregon practices, I have relied upon:

   a. My experience working throughout the United States.

   b. My research and writing.

   c. My participation in hundreds of educational programs about maltreated children and children in out-of-home care.

   d. My past meetings, discussions, and collaboration with leading child welfare experts, leading administrators and practitioners, and leading educators for over thirty years.

   e. My participation in national standard setting meetings.

   f. A recent discussion with the Child Welfare League of America (CWLA) Director of Standards of Excellence. She and I discussed whether the Oregon DHS practices in question are consistent with CWLA standards and guidelines. CWLA is the leading child welfare standard setting organization in the United States.

7. Key professional norms, standards, and accepted practices: The following are fundamental norms, standards, and practices in child welfare throughout the United States, on which I rely:

    a. Agencies must assist and support families having difficulty caring for children in the home, in order to prevent unnecessary out-of-home placements—and thus also reducing the demand for foster family homes.

    b. When children must be placed away from home for their own protection, they must be placed with relatives, in specially licensed or approved foster family homes, or else in specialized group, residential, or institutional facilities.

    c. When appropriate, the state must place children with relatives rather than in foster family care and must identify, recruit, screen, and assist those relatives. This also reduces the need for foster families,

    d. Foster parents must be actively recruited and carefully selected pursuant to federal and state regulations and practices.

    e. Foster parents must be trained, monitored, overseen, and supported by state or local child welfare agencies.

    f. When children cannot function within foster family homes, they must be placed in licensed and approved group care, including group homes, residential care, and, when necessary, specialized institutional facilities. Staff of such homes and facilities must be specially qualified and trained.

       g. The state must recruit, screen, and train sufficient numbers of foster families and must establish or fund group care facilities to provide care for all abused and neglected children placed outside the home.

       h. In all of my work, including discussions with thousands of judges, lawyers, administrators, supervisors, caseworkers, foster parents, service providers, and volunteers no one has referred to the Oregon practices described above as acceptable or desirable.

       i. The state must provide sufficient financial and administrative support to achieve the above norms and practices.

       j. States can and do meet these basic norms, standards, and practices.

8.     Opinion: The Oregon DHS practices described above—placing abused and neglected children in hotels, agency offices, and detention facilities—are not considered part of accepted practice in child welfare cases. Such practices are inconsistent with well established, fundamental, and long standing professional norms, standards, and practices in child welfare. These Oregon DHS practices described above are not on any accepted list of placement priorities of which I am aware, because they do not provide for the basic needs of children removed from home. Oregon has the ability to eliminate such bad practices by providing additional and better focused resources and by improving administrative practices.

9.     Compensation and prior expert testimony: I have never before testified as an expert in any matter. I am performing all expert services on this case on a pro bono basis.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this _____30th_____ day of September, 2016.

MARK HARDIN

7-   DECLARATION OF MARK HARDIN