# FINAL SETTLEMENT AGREEMENT

I. INTRODUCTION AND GENERAL AGREEMENTS

    A.    The parties wish to settle *A.R., et al. v. State of Oregon et al.*, United States District Court for the District of Oregon, Portland, Division, No. 3:16-cv-01895-YY (the "Action").

    B.    Plaintiffs are A.R., a minor child, and B.C., a minor child, represented by their guardian *ad litem* Richard Vangelisti, who seek relief on behalf of themselves and all others similarly situated, and CASA for Children, Inc., which seeks relief on behalf of itself and Oregon foster children and young adults.

    C.    Defendants are the State of Oregon, and state officials named in their official capacity, namely the Director of the Oregon Department of Human Services, currently, Fariborz Pakseresht, and the Deputy Director of the Oregon Department of Human Services, currently, Dr. Reginald Richardson.

    D.    This Settlement Agreement ("Settlement Agreement") is a final settlement of plaintiffs' claims asserted in the First Amended Complaint described in more detail below.

    E.    The parties share the goal of ensuring that all foster children and young adults in Oregon are placed appropriately.

    F.    Defendants dispute plaintiffs' allegations.  This Settlement Agreement is not an admission of liability, and defendants deny that they are in violation of the Fourteenth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, ORS 659A.142, or any other laws or regulations.

    G.    The parties represent and acknowledge that this Settlement Agreement is the result of extensive, thorough, and good faith negotiations.  The parties further represent and acknowledge that the terms of this Settlement Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making this Settlement Agreement.

    H.    The Court has jurisdiction over the Action pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1367.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

    I.    This Settlement Agreement will be interpreted in accordance with federal law and the laws of the State of Oregon.  The venue for all legal actions

concerning this Settlement Agreement will be in the United States District Court for the District of Oregon, Portland Division (the "Court").

J. The Honorable Michael McShane shall resolve any disputes that may arise under this Settlement Agreement pursuant to section VI and IX below. Judge McShane's decisions regarding any such disputes shall be final and not subject to appeal. If Judge McShane is unavailable, the Chief Judge of the United States District Court for the District of Oregon will assign a judge to resolve the dispute.

## II. DEFINITIONS

For the purposes of this Settlement Agreement only, the following terms have the following meanings:

A. "Effective Date (of this Settlement Agreement)" means the date on which this Settlement Agreement has been fully executed by all parties and an appropriate order has been entered by the court.

B. "Foster child(ren)" is a child up to and including age 17 in the custody of the Oregon Department of Human Services who is in substitute care.

C. "Young adult(s)" is a person aged 18-20 who is in the custody of the Oregon Department of Human Services.

D. An "appropriate placement" is a certified foster or relative home or facility licensed to care for foster children or young adults in Oregon, as well as psychiatric or other residential medical facilities, whether for acute or preventative care, where medically necessary for the foster child or young adult's physical or mental health, an out-of-state placement approved by Interstate Compact on the Placement of Children, and independent living facilities or transitional housing for individuals transitioning out of foster care. "Certified" includes regular, relative, special, expedited and emergency certifications and includes placement with a relative or with an adult known to the child or young adult pending an imminent certification.

E. "Nonplacement" refers to a foster child or young adult spending the night in an office (except in compliance with section III.A below), a hospital or other medical facility despite readiness for medical discharge, a juvenile detention facility despite the absence of any criminal or delinquency charge, or any other facility, but excluding: (1) an appropriate placement as defined herein; or (2) when temporarily lodged, as defined and permitted herein.

F. "Temporary lodging" and "temporarily lodged" refer to a foster child or young adult spending the night in a hotel, a motel, or inn described more fully in section III.

G. "Oregon" or "the State" means the State of Oregon, including the Oregon Department of Human Services.

H. "Department" or "DHS" means the Oregon Department of Human Services.

I. "Business day" means a day when Oregon state courts are open for hearings.

III. ELIMINATION OF NONPLACEMENT AND LIMITS ON TEMPORARY LODGING

A. DHS will not engage in the practice of nonplacement, except as provided in this Settlement Agreement. However, if a foster child or young adult meets the criteria for temporary lodging as set forth in this section III, but there is no available and safe hotel within 30 miles or 30 minutes of the DHS office in the county where the foster child or young adult is found at the time the need for temporary lodging arises, then DHS may lodge the foster child or young adult in that DHS office for up to two nights.

B. DHS is temporarily excused from complying with the provisions of sections III.A, C, D and J in the event of unavoidable national or regional circumstances preventing compliance, including but not limited to a substantial decrease in federal funding, changes in applicable federal laws or rules significantly impacting foster care, natural disasters or other occurrences (e.g. eclipse viewer migration, earthquakes, floods, tornadoes, wildfires), significantly disruptive events such as demonstrations and strikes, or other similarly significant events not caused by the State limiting the State's access to appropriate placements. DHS compliance is only excused during the time that the unavoidable national or regional circumstance prevents compliance. If DHS determines that it will invoke this paragraph to excuse its performance of any obligation under this Settlement Agreement, DHS must provide written notice to plaintiffs no later than the due date for the State's response to plaintiffs as provided under section VI.D herein. In any enforcement proceeding under this Settlement Agreement pursuant to section VI.E herein, after plaintiffs carry their burden to prove that DHS is not in substantial compliance with this Settlement Agreement, defendants shall bear the burden to prove that an unavoidable national or regional circumstance has occurred that temporarily prevents compliance.

C. DHS will reduce the number of foster children and young adults (counted per child or young adult, not per incident) temporarily lodged as follows:

(1) In the period starting June 1, 2018 and ending December 31, 2018, DHS will temporarily lodge no more than 120 foster children and young adults.

3

    (2)    In the six months following the period described in (1), specifically, January 1, 2019 through June 30, 2019, DHS will temporarily lodge no more than 90 foster children and young adults.

    (3)    In the six months following the period described in (2), specifically, July 1, 2019 through December 31, 2019, DHS will temporarily lodge no more than 45 foster children and young adults.

    (4)    In the six months following the period described in (3), specifically, January 1, 2020 through June 30, 2020, DHS will temporarily lodge no more than 23 foster children and young adults.

    (5)    In the six months following the period described in (4), specifically July 1, 2020 through December 31, 2020, DHS will temporarily lodge no more than 12 foster children and young adults. For each six month period during the remainder of the term of this Settlement Agreement, this same limitation will apply.

D.    Beginning on July 1, 2018, DHS will only temporarily lodge foster children and young adults on a temporary basis. For the purposes of this section, "temporary" or "temporarily" means:

    (1)    For foster children ages 0-10, lodging up to 5 nights.

    (2)    For all other foster children (age 11 -17), lodging up to 12 nights.

    (3)    For young adults, lodging up to 21 nights.

E.    After July 1, 2018, temporary lodging that exceeds the time periods set forth in section III.D is presumptively prohibited. However, that presumption may be overcome with a showing of good cause.

    (1)    For the purposes of this section, "good cause" means one or more of the following:

        (a)    an appropriate placement consistent with approved level of care has been located for the foster child or young adult and has committed to accepting the foster child or young adult within a short period and it would be more disruptive or unsafe to the foster child or young adult to move the child or young adult to an additional short term placement; or

        (b)    where, while in temporary lodging, the foster child or young adult opposes a proposed planned placement by

                DHS and seeks a juvenile court order preventing that placement, the temporary lodging may continue up to five business days past the time periods set out in section III.D while the matter is pending before the juvenile court. Where timely requests have been made to the juvenile court and there is no available juvenile court time to hear the matter, the temporary lodging may continue for a period of up to an additional five business days pending the juvenile court's determination.

    (2)    There can be no good cause finding where:

        (a)    the foster child is not in school, or DHS has not enrolled or transported the eligible young adult who wishes to be enrolled and/or transported to school, pursuant to section III.G, or

        (b)    the foster child or young adult is unable to access physical, mental health, or educational services that were in place at the time of need for the temporary lodging and that are appropriate for the child or young adult at the time, when such services were lost as a result of the temporary lodging, or

        (c)    the foster child is not engaged in appropriate activities, or the young adult has not been offered appropriate activities, during a substantial portion of the day time hours, pursuant to a reasonable and prudent parent standard.

F.    At least annually, DHS will require training of every DHS caseworker, program manager, district manager and supervisor about obligations in this Settlement Agreement.

G.    If a foster child or young adult is temporarily lodged while school is in session, DHS shall transport the foster child or ensure the foster child is transported, and shall offer to transport or offer to arrange for the transportation of the young adult, to the school where the foster child is enrolled, subject to the application of a reasonable and prudent parent standard to excuse the foster child or young adult from school. Where the juvenile court has made a determination that it is not in the best interest of the foster child or young adult to continue attending the school he or she attended prior to the temporary placement or any other school in that school district, then DHS shall take all necessary steps to enroll the foster child, and any young adult who wishes to be enrolled and is eligible for enrollment, in a new school within three business days. If the foster child was not enrolled in any school prior to the temporary lodging, DHS shall take all necessary steps to enroll the foster child in a school where the

5

       foster child is eligible to be enrolled within three business days, and then transport the foster child or ensure the foster child is transported to school once enrolled, unless an appropriate placement has been located for the foster child which has committed to accepting the foster child within a short period and it would be more disruptive to the child to change schools.   Nothing in this Settlement Agreement, however, requires DHS to take a foster child or young adult to a school if school is not in session, or if the school has determined that the foster child or young adult may not attend that school, nor does it excuse any preexisting legal obligation of DHS to ensure that the foster child or young adult has adequate educational services.

H. DHS will provide appropriate activities during the day time hours for temporarily lodged foster children who are not attending school, and will offer appropriate activities to young adults, pursuant to a reasonable and prudent parent standard.

I. DHS will only temporarily lodge a foster child or young adult after determining there is no possibility of supporting the foster child or young adult in a family member's home with appropriate safety planning or in the current placement with services and supports, and no safe and appropriate certified regular, relative, special, (including with kith or person with a caregiver relationship with the foster child or young adult) expedited or emergency foster home or licensed residential placement is available for the foster child or young adult.  DHS' efforts to avoid temporarily lodging a foster child or young adult may include but are not limited to the provision of a DHS caseworker making daily visits to, and/or a contracted provider staying overnight in, the foster child's or young adult's current placement or parent's home, so long as these efforts are intended to ensure the foster child's or young adult's safety.  DHS must consider services and supports despite the costs, unless those costs exceed the amount of money it would otherwise spend to provide temporary lodging.

J. After July 1, 2018, DHS will temporarily lodge any particular foster child on no more than two occasions per episode of care.  After July 1, 2018, DHS will temporarily lodge any particular young adult on no more than three occasions per episode of care.  "Episode of care" means a continuous period during which a foster child or young adult is in the custody of DHS. Instances where a foster child or young adult is removed from temporary lodging for short-term but appropriate placement or services, such as short stays with family members, or in respite or medical or mental health treatment, but returns to temporary lodging without being placed in an appropriate placement, will not be considered a break in temporary lodging for the purposes of counting the number of "occasions" a foster child or young adult is in temporary lodging. However, regardless of approved interruption or breaks in temporary lodging under this

> subsection, unless good cause exists, no foster child may be temporarily lodged for more than twice the time limitation periods set out in section III.D for a foster child of that age, and no young adult may be temporarily lodged for more than three times the time limitation periods set out in section III.D for a young adult, during an episode of care.

**IV.    REPORTING**

    A.    For every foster child or young adult who is in temporary lodging, or in a nonplacement, DHS will provide to plaintiffs' counsel on a bi-weekly (every other week) basis, preliminary reports, followed by a monthly reconciled report, including:

        (1)    the foster child or young adult's age,

        (2)    the foster child or young adult's county of wardship,

        (3)    a unique, confidential numerical identifier for the foster child or young adult,

        (4)    the number(s) and type(s) of location(s) and city where the foster child or young adult slept,

        (5)    the dates that the foster child or young adult stayed in each location,

        (6)    the number(s) and type(s) of location(s) and city where the foster child or young adult was during each day of temporary lodging (e.g., "DHS office," "contractor's campus," "after-school program"),

        (7)    whether the foster child or young adult was attending school before the temporary lodging, whether the foster child or young adult is attending school during the temporary lodging, and whether the temporary lodging school is the same as the school prior to the temporary lodging, and

        (8)    a description of people notified of the foster child or young adult's temporary lodging, by relationship to the foster child or young adult (e.g., "mother," "CASA," "child's attorney").

    B.    In addition, DHS will notify that foster child or young adult's respective court-appointed juvenile court attorney and assigned CASA advocate, if any, of the nonplacement or temporary lodging within one business day of the nonplacement or temporary lodging.

7

**V.    IMPLEMENTATION**

    A.    All parties share the goal of providing every foster child and young adult with placement in a safe setting that is the least restrictive, most family-like and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the foster child or young adult.

    B.    In order to facilitate this goal, in addition to using its current staff, DHS will contract with a Technical Advisor. The parties agree that the Technical Advisor shall be Liesl Wendt.

        (1)    In the event that Ms. Wendt becomes unavailable to serve as Technical Advisor, a replacement Technical Advisor will be selected by DHS subject to the plaintiffs' approval, which will not be unreasonably withheld. Within 30 days of learning of Ms. Wendt's unavailability, DHS will identify its preferred candidate to plaintiffs by giving written notice to plaintiffs' counsel. If, within 14 days of DHS' identification, plaintiffs disapprove of or fail to respond to the DHS selection, counsel for the parties shall convene a telephone conference to discuss other possible candidates and determine whether they can agree on a candidate.

        (2)    If the parties are unable to agree on the selection of a replacement Technical Advisor after following the procedure outlined in section V.B(1) above, then no later than 7 days after the telephone conference of counsel described in section V.B.(1), each party will submit to Judge McShane a list of up to three nominees and Judge McShane will select the Technical Advisor pursuant to Fed. R. Evid. 706 (a). Each nominating party must identify and describe each nominee's qualifications and experience.

        (3)    If a replacement Technical Advisor is selected, in no event will the replacement Technical Advisor be required to repeat the work already performed by Ms. Wendt.

        (4)    The qualifications of the Technical Advisor shall include experience in appropriate and applicable subject areas such as the following: experience administering a state or county health and human services agency; experience in working collaboratively with a government health and human services agency and plaintiffs' counsel in implementing a court order or settlement agreement outlining reforms to the government agency's practices and policies; extensive knowledge about state and national performance standards in health and human services; expertise in safely and equitably reducing the use of out of home care for children and young adults; experience in developing policies and practices that promote recruitment, retention, training and support for foster parents; and experience with the provision of services to children and young adults with disabilities.

  (5) The duties of the Technical Advisor shall include, at a minimum,

    (a) Conducting an initial evaluation of the root causes of the nonplacement and temporary lodging of foster children and young adults;

    (b) Identifying the barriers, gaps, and service deficiencies that would address the root causes of the nonplacement and temporary lodging of foster children and young adults;

    (c) Assisting DHS to modify its current plan or develop a different plan to address the identified root causes;

    (d) Assisting DHS to implement the plan by providing advice, technical assistance, and/or training as requested by DHS; and

    (e) Monitoring and reporting no less than every six months to the parties on DHS implementation of the plan.

  The contents of the Technical Advisor's evaluation and the DHS plan shall be advisory and shall not be considered terms of this Settlement Agreement. At the request of DHS, the Technical Advisor will make herself or himself available to assist DHS in additional ways to implement this Settlement Agreement and/or to achieve the goals identified in section V.A. The Technical Advisor shall be free to communicate directly with the Governor's office regarding any matters related to the Technical Advisor's work pursuant to this Settlement Agreement.

  (7) The Technical Advisor shall be retained for a period of not less than two years. The Technical Advisor shall be reimbursed by the State up to a maximum of $250,000 per year, including all allowable expenses and the cost of any staff. The State anticipates that the services of the Technical Advisor will require a minimum of 120 hours per month to perform. To the extent that DHS contracts with Ms. Wendt to begin to perform the duties outlined in section V.B.5 before the Effective Date of this Settlement Agreement, the time spent by Ms. Wendt on that work and the amount spent to reimburse Ms. Wendt for that work shall count towards the two-year retention period and the annual expense cap.

## VI. DISPUTE RESOLUTION, ENFORCEMENT, AND MONITORING

 A. All of the provisions included in this Settlement Agreement are separately and independently enforceable by the parties and all Oregon foster children and young adults.

 B. For purposes of this section, "substantial compliance" means something less than strict and literal compliance with every provision of this Settlement Agreement. Rather, deviations from the terms of the Settlement Agreement may occur, provided any such deviations are unintentional and so do not substantially defeat the object which the

4817-7903-7521.1
Exhibit B
Page 9

        parties intend to accomplish, or to impair the structure of the Settlement Agreement as a whole.

C.     If the plaintiffs believe that defendants have failed to remain in substantial compliance with any obligation under this Settlement Agreement, the plaintiffs must, before initiating any court proceeding to remedy such failure or seek additional relief, give written notice to the State which sets forth with specificity the details of the alleged failure to remain in substantial compliance.

D.     The State shall have 30 days from the date of such written notice to respond in writing by denying that the alleged failure to remain in substantial compliance has occurred, or by accepting the allegation of failure to remain in substantial compliance and proposing steps that the State will take, and by when, to cure the alleged noncompliance.  If the State proposes such steps, they must be completed no later than 10 days from when they are proposed.

E.     If the State fails to respond within 30 days or denies that it has failed to remain in substantial compliance, or fails to complete the steps it proposed to cure the alleged noncompliance within 10 days of its proposal, or if the plaintiffs do not believe the State's steps have cured, the plaintiffs may seek appropriate relief from Judge McShane.  Judge McShane shall determine whether or not the hearing shall take place by telephone, and whether testimony is needed.  In any enforcement proceeding allowed under this Settlement Agreement, the plaintiffs shall bear the burden of proving a lack of substantial compliance.  Judge McShane's decisions regarding any such disputes shall be final and not subject to appeal.  The plaintiffs, however, will not seek a contempt order or extension of the Settlement Agreement in the first instance for any lack of substantial compliance with this Settlement Agreement.   This Settlement Agreement is subject to extension by Judge McShane as a remedy in an enforcement proceeding allowed under this Settlement Agreement only on a finding that (1) the State was not in substantial compliance with the Settlement Agreement at the time such extension is sought; (2) the State has been found by Judge McShane to be not in substantial compliance with the Settlement Agreement in more than one prior occasion; and (3) the extension sought is reasonable in light of the evidence supporting the finding that the State is not in substantial compliance at the time such extension is sought.

F.     After the Effective Date, any discovery pursuant to the Federal Rules of Civil Procedure, including but not limited to depositions, subpoenas, or requests for production of documents, may only be propounded after an order by Judge McShane authorizing the discovery.  In the event discovery is allowed, the parties anticipate that a protective order may be necessary.

        The parties agree that Judge McShane may enter such other protective orders as Judge McShane deems appropriate.

G.     Judge McShane shall determine the scope and means of discovery, if any, in enforcement proceedings, but the parties agree that the scope and means of discovery shall be as narrow and cost-effective as possible in all instances, and consistent with an expedited hearing schedule. Plaintiffs must make a showing of their need for discovery. The State may oppose the requested discovery.

H.     If, outside the context of enforcement proceedings, plaintiffs believe access to State records is necessary in order to evaluate the State's substantial compliance with this Settlement Agreement, plaintiffs may, following conferral with counsel for the State, seek an order from Judge McShane allowing limited discovery. Plaintiffs must demonstrate their need for discovery, and the State may oppose discovery. The parties specifically agree that only document discovery will be available outside of enforcement proceedings.

I.     In any enforcement proceeding pursuant to this section, the prevailing party shall be awarded their reasonable attorney fees and costs incurred in connection with the dispute ("enforcement fees"). The standards for determining entitlement to, and the amount of, attorney fees are those set forth in the Civil Rights Attorney Fee Awards Act, 42 U.S.C. § 1988 and the Americans with Disabilities Act, 42 U.S.C. § 12205. Any fee petition seeking enforcement fees shall be subject to the procedures, rules, and substantive law applicable to fee petitions in the United States District Court for the District of Oregon and shall be resolved pursuant to the reasonableness standard contained in *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983). Each party shall be entitled to present any and all objections to any fee petition submitted by the opposing party. The plaintiff is a prevailing party for purposes of this section if the plaintiff prevails on any substantial issue that obtains some of the relief sought, and the defendant is a prevailing party for purposes of this section if the defendant prevails on claims that are frivolous, unreasonable, or groundless.

J.     The State shall bear its own costs and attorney fees for any post-judgment monitoring. The State agrees to pay to plaintiffs $10,000 per year, or a pro-rated amount for any partial year while the obligation to pay fees under this section VI.J remains in effect, for reasonable and necessary attorney fees and costs incurred in the monitoring of the Settlement Agreement, beginning on the Effective Date of this Settlement Agreement. Payments will be made within 45 days from the end of each payment period. The first payment period will begin on the Effective Date and end on December 31, 2018. Subsequent payment periods will be annual and end with the calendar year, unless the obligation to pay monitoring fees terminates earlier than the end of a calendar year. Monitoring fees for a

11

    partial year will be paid at the rate of $27.40 per day. The State's obligation to pay attorney fees and costs incurred in the monitoring of the Settlement Agreement terminates six months after the first six month period described in section III.C.5, specifically, December 31, 2020, unless, prior to that date, plaintiffs began enforcement proceedings and ultimately prevail in proving that the State is not in substantial compliance with the Settlement Agreement.  In that event, the State's obligation to pay monitoring fees and costs shall continue until the termination of the Settlement Agreement.

  K. No attorney fees or costs for monitoring may be included in activities undertaken in connection with enforcement proceedings brought by plaintiffs in order to enforce this Settlement Agreement.  In no event shall plaintiffs be entitled to recover enforcement fees or costs for activities undertaken prior to the delivery by plaintiffs of written notice to defendants pursuant to section VI.C of this Settlement Agreement and the conclusion of defendants' time to respond and cure pursuant to section VI.D of this Settlement Agreement.

## VII. RELEASE AND DISMISSAL

  A. Plaintiffs release and discharge defendants from all potential liability for all claims seeking declaratory or injunctive relief to end nonplacements and/or temporary lodging, arising out of conduct through the termination of this Settlement Agreement, including claims under the Fourteenth Amendment, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and ORS 659A.142.  Plaintiffs' sole remedy, if any, is provided in the enforcement provisions of this Settlement Agreement.   A breach of the Settlement Agreement does not revive any claims released by this section.  Plaintiffs preserve all other claims seeking declaratory or injunctive relief.

  B. Plaintiffs preserve all claims against defendants for money damages.  The parties agree that the scope of authority vested in Richard Vangelisti, as the guardian *ad litem* for the two individual child plaintiffs, does not currently extend to the ability to bring or to release claims for money damages on their behalf.  Mr. Vangelisti warrants, however, that he is not investigating or recommending that someone else investigate claims for money damages by the two individual child plaintiffs.

  C. The Action will be dismissed in accordance with the order of the Court.

## VIII. TERMINATION OF THE SETTLEMENT AGREEMENT

    This Settlement Agreement terminates on December 31, 2022 unless extended pursuant to section VI.E.

IX. **GENERAL PROVISIONS**

    A.    The parties agree jointly to file this Settlement Agreement with the United States District Court for the District of Oregon, Portland Division for entry of an appropriate order consistent with the terms of this Settlement Agreement. This Settlement Agreement shall be enforceable in this Court as described in section VI. above.

    B.    This Settlement Agreement is binding upon the parties, by and through their officials, employees, and successors for the term of this Settlement Agreement. To the extent that DHS hires outside contractors to perform any of the obligations required under this Settlement Agreement, DHS agrees that it is responsible for the performance of those obligations.

    C.    Failure by any party to enforce this entire Settlement Agreement or any provision thereof with respect to any deadline or any other provision herein shall not be construed as a waiver, including the party's right to enforce other deadlines and provisions of this Settlement Agreement.

    D.    The parties shall promptly notify each other of any court or administrative challenge to this Settlement Agreement or any portion thereof, and shall defend against any challenge to the Settlement Agreement.

    E.    This Settlement Agreement, and any conclusions or determinations made by the Technical Advisor pursuant to this Settlement Agreement, shall not be subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

    F.    Nothing in this Settlement Agreement requires State to take actions inconsistent with federal law or federal funding requirements.

    G.    All Protective Orders in this Action shall remain in place until the termination of this Settlement Agreement, and any documents, records, and materials made available to plaintiffs under this Settlement Agreement may be produced as confidential pursuant to any such Protective Orders.

    H.    Counsel for the plaintiffs may seek an award of reasonable attorney fees and costs incurred in the prosecution of the claims in the First Amended Complaint as of the Effective Date of this Settlement Agreement. The parties and Judge McShane shall apply the reasonableness standard contained in *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983).

        (1)    The parties agree to work in good faith to agree on the amount of the reasonable fees and costs that will be paid to counsel for plaintiffs pursuant to this section.

        (2)    In the event the parties do not reach agreement on the amount of reasonable fees and costs that will be paid to counsel for plaintiffs pursuant to this section within 30 days of the Effective Date of this

        Settlement Agreement, this Settlement Agreement shall remain in force, including the provisions of this section.  Counsel for plaintiffs shall submit a fee petition in this Action to Judge McShane for the recovery of fees and costs under this section.  Defendants shall be entitled to present any and all objections to any fee petition submitted by counsel for plaintiff.  Judge McShane's determination shall be based upon the applicable standard in the District of Oregon.

    (3)    Plaintiffs' fee petition shall be subject to the procedures, rules, and substantive law applicable to fee petitions in the United States District Court for the District of Oregon.  Rates will be based on a percentile of the rates stated in the Oregon State Bar Economic Survey as adjusted as permissible under decisions by the United States District Court for the District of Oregon.  Plaintiffs may not seek any fees for time beyond that actually spent or costs beyond those actually incurred, and they shall not seek any fee multiplier or other enhancement.

    (4)    The parties agree that Judge McShane's decision on reasonable fees and costs shall be binding, and that no party will have any right to appeal his decision.

I.    The signatures below of officials and attorneys representing plaintiffs and the State signify that these parties have given their final approval to this Settlement Agreement.  Each party to this Settlement Agreement represents and warrants that the person who has signed this Settlement Agreement on behalf of his or her entity or clients is duly authorized to enter into this Settlement Agreement and to bind that party to the terms and conditions of this Settlement Agreement.

J.    This Settlement Agreement and any documents incorporated by reference constitute the entire integrated Settlement Agreement of the parties.  No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

K.    This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same Settlement Agreement, notwithstanding that each party is not a signatory to the original or the same counterpart.  All references to signature or execution of the Settlement Agreement shall be calculated from the date on which the last party executed the Settlement Agreement.

## X. NOTICE

When notice under this Settlement Agreement is to be provided to plaintiffs, it will be provided by electronic mail to each of the following or their successors:

Emily Teplin Fox/Ed Johnson/Ryan Newby
efox@oregonlawcenter.org; ejohnson@oregonlawcenter.org; rnewby@oregonlawcenter.org
OREGON LAW CENTER
522 SW 5th Avenue, Suite 812
Portland, OR  97204

Angela Sherbo/Caitlin Mitchell
Angela.S@youthrightsjustice.org; Caitlin.M@youthrightsjustice.org
YOUTH, RIGHTS & JUSTICE
1785 NE Sandy Blvd., Suite 300
Portland, OR 97232

Bruce A. Rubin/Cody Elliott/Nick Pyle
bruce.rubin@millernash.com; cody.elliott@millernash.com; nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon  97204


When notice is to be provided to the State and/or DHS under this Settlement Agreement it will be provided by mail to each of the following:

Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

General Counsel
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

Director of the Department of Human Services
Oregon Department of Human Services
500 Summer St. NE
Salem, OR 97301


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

_Richard J. Vangelisti_ — 2-26-18
_____   _____
Richard Vangelisti, in his capacity as             Date
guardian *ad litem* for Plaintiffs A.R. and B.C.


CASA FOR CHILDREN, INC.

By: _____   _____
                                                          Date
Printed Name: _____

Title: _____


STATE OF OREGON, by and through its
Department of Human Services


By: _____   _____
                                                          Date
Printed Name: _____

Title: _____


_____   _____
Fariborz Pakseresht, in his capacity as            Date
Director of the Oregon Department of
Human Services


_____   _____
Reginald C. Richardson, in his capacity as         Date
Deputy Director of the Oregon Department
of Human Services


**APPROVED:**

_____   _____
                                                          Date
Printed Name: _____
    Of Attorneys for All Plaintiffs

16

_____   _____
Richard Vangelisti, in his capacity as    Date
guardian *ad litem* for Plaintiffs A.R. and B.C.

CASA FOR CHILDREN, INC.

By: _[signature]_____   2/23/18
Printed Name: Betsy Stark Miller      Date
Title: Executive Director

STATE OF OREGON, by and through its
Department of Human Services

By: _____
                                          _____
Printed Name: _____   Date

Title: _____

_____   _____
Fariborz Pakseresht, in his capacity as   Date
Director of the Oregon Department of
Human Services

_____   _____
Reginald C. Richardson, in his capacity as   Date
Deputy Director of the Oregon Department
of Human Services

**APPROVED:**

_____   _____
                                          Date
Printed Name: _____
    Of Attorneys for All Plaintiffs

16

_____   _____
Richard Vangelisti, in his capacity as           Date
guardian *ad litem* for Plaintiffs A.R. and B.C.


CASA FOR CHILDREN, INC.

By: _____          _____
                                        Date
Printed Name: _____

Title: _____


STATE OF OREGON, by and through its
Department of Human Services

By: *Fariborz Pakseresht*          2-22-2018
                                   Date
Printed Name: Fariborz Pakseresht

Title: Director

_*Fariborz Pakseresht*_                    2-22-2018
Fariborz Pakseresht, in his capacity as    Date
Director of the Oregon Department of
Human Services

_*Reginald C. Richardson*_                 2-22-18
Reginald C. Richardson, in his capacity as  Date
Deputy Director of the Oregon Department
of Human Services


**APPROVED:**

_____          _____
                                    Date
Printed Name: _____
        Of Attorneys for All Plaintiffs

16

_____     _____
Richard Vangelisti, in his capacity as         Date
guardian *ad litem* for Plaintiffs A.R. and B.C.

CASA FOR CHILDREN, INC.

By: _____     _____
                                                                            Date
Printed Name: _____

Title: _____

STATE OF OREGON, by and through its
Department of Human Services

By: _____     _____
                                                                            Date
Printed Name: _____

Title: _____

_____     _____
Fariborz Pakseresht, in his capacity as        Date
Director of the Oregon Department of
Human Services

_____     _____
Reginald C. Richardson, in his capacity as     Date
Deputy Director of the Oregon Department
of Human Services

**APPROVED:**

*etfox* _____     __2/26/18_____
                                                                            Date
Printed Name: EMILY TEPLIN FOX
Of Attorneys for All Plaintiffs

16

OREGON DEPARTMENT OF JUSTICE

_____   __2/22/18_____
                                  Date

Printed Name: Frederick M. Boss
Of Attorneys for All Defendants